Moncure, J.
The indictment in this case is against Benoni Lazier and Hyatt Lazier, for the murder of Clemansa Devon, and éontains two counts. The accused demurred generally to the indictment and each of the counts; and the attorney for the commonwealth joined in demurrer. The demurrers were overruled. The accused being then arraigned, severally pleaded not guilty, and elected to be tried separately. Benoni Lazier was tried first; and was convicted of murder in the second degree, and sentenced to imprisonment in the penitentiary for fifteen years, the period by the jurors in their verdict ascertained: And this is a writ of error to the judgment against him.
The writ was awarded and made returnable during the présent session of this court, but after the first day thereof; and a preliminary question was raised by the counsel for the plaintiff in error, whether it should not have been made returnable to the court on the first day of a term, or in the clerk’s office to the first Monday in a month, or to some rule day. This *711 question is answered by tbe Code, p. 642, § 2, which declares that “ process awarded in court may be returnable as the court shall direct.”
The first error assigned in the judgment is, that the court erred in overruling the demurrers: And this assignment of error I will now proceed to consider.
It was decided by the General court in the case of the Commonwealth v. Jackson, 2 Va. Cas. 501, that the act in 1 Rev. Code 1819, p. 511, § 101, taken from the English statute of 27 Eliz. ch. 5, declaring that the court shall not regard any other defect or imperfection in the pleadings than what shall be specially alleged in the demurrer as causes thereof, does not extend to criminal causes; and therefore-, in such cases, defects or imperfections of form may be taken advantage of on general demurrer. The same construction should be put on the corresponding provision in our present Code, p. 650, § 81; and the same objection may still be made on a general, as on a special demurrer in a criminal case. There are provisions in the Code, however, dispensing with the ñecessity of formal allegations in an indictment; and declaring that “no indictment or other accusation shall be quashed, or deemed invalid,” for any of certain enumerated causes. So far as these provisions- extend, they cure the indictment against objection, however raised; and they seem to extend to most if not all defects of form.
One of the objections taken to the indictment is, that the two counts appear to be for the same murder; whereas the joinder of several counts in one indictment is allowed on the theory, that two or more offences of the same nature, on which the same or a similar judgment may be given, may be contained in different counts of the same indictment; and it should therefore appear in the form of stating the offence in the different counts, that they are for different offences; otherwise the indictment is demurrable for duplicity.
*712 It is usual to obviate this technical objection of duplicity, by inserting the word “ other” before the sub- • ject of the offence in a second count. But it is not inserted in all cases, and its insertion in no case is indispensably necessary. It is not usual to insert it in indictments for murder; but the party murdered is described in all the counts as the same person, and the instrument of death is not always stated in the different counts to be a different instrument; nor can it be necessary that it should be so stated; for certainly different offences may be committed with the same instrument. The indictment in this case, so far as relates to this objection, conforms to precedents furnished by approved writers on criminal law. The objection, therefore, does not apply to the case. But if so technical an objection would ever have been sustained in any case in this state, it would not now; the Code, p. 770, § 11, having dispensed with the necessity of inserting in an indictment any allegation which is unnecessary to be proved. So far from its being necessary to prove that offences stated in different counts of an indictment are different offences, if they are in fact different, and are felonies, the indictment may be quashed, or the prosecutor compelled to elect for which offence he will proceed; though the indictment will not on that ground be demurrable.
Another objection taken to the indictment is that the dates are set out in figures instead of words.
It is certainly safer and more certain to set out dates in an indictment in words instead of figures. Figures are more easily altered than words, and are more apt to be illegible, either from obliteration, or not being plainly made. In practice, they are not often used in indictments, except in describing written instruments, though they sometimes are: And I do not think that at this day the use of them would be a fatal defect in an indictment, even at common law. In England it would be under the statutes 4 Geo. 2, ch. 26, and 6 *713 Geo. 2, ch. 14, requiring all indictments to be in words, at length.
Wharton, in his American Criminal Law, p. 146, says that dates are more properly inserted in words written at length, than in Arabic characters; but a contrary practice will not vitiate an indictment. The cases which he cites, so far as I have had access to them, seem fully to sustain what he says. There are, no doubt, some American cases the other way, and 6 Blackf. R. 533, is cited as being so, by the counsel for the plaintiff in error. The preponderance of American cases, however, is decidedly in favor of the position of Wharton. But even if the use of figures, instead of words, in setting out the dates in this indictment would be a fatal defect at common law, it would not under our statute, Code, p. 770, § 11, which declares that no indictment or other accusation shall be quashed or deemed .invalid for omitting to state, or stating imperfectly, the time at which the offence was committed, when time is not the essence of the offence.
An objection taken to the first count is, that it is insensible, or contradictory and repugnant, in speaking of the “ aforesaid 14th day of December,” when no other day than the 9th of December is before mentioned.
It is sufficient in regard to this objection to say, that even if it would have been valid at common law, it is not under our statute, Code, p. 770, § 11, which declares that no indictment or other accusation shall be quashed or deemed invalid for omitting to state or stating imperfectly the time, &c., or for the omission or insertion of words of mere form or surplusage. The word “ aforesaid,” before the “ 14th day of December,” is mere surplusage, and its insertion therefore is not a fatal defect.
Another objection taken to the first count is, that *714 the length, breadth and depth of the wound is not set out therein.
The common law requires that the manner in which, or the means by which, the death of the deceased was caused, at least if known to the grand jurors, should be set forth in an indictment for murder. This requisition often renders several counts and long and particular statements in an indictment for murder necessary ; and, after all, sometimes leads to an acquittal, by means of a fatal variance. In England this needless and mischievous requisition has been wisely dispensed with by st. 14 & 15 Viet. ch. 100, § 4; and the length of an indictment for murder in that country is now but four lines. For this statute, and a statement of its advantages, see 2d Arch. Crim. Practice and Pleadings, p. 200-1, 2, and note (1,) Waterman’s American edition 1853. Our Code' has, to some extent, modified this common law requisition.
Where the death of the deceased was caused by a wound inflicted by the accused, it was formerly held in England that the length and depth of the wound should generally, but need not always, be stated. But this doctrine has been recently overruled. In Rex v. Mosley, 1 Moody’s R. 98, 2 British Crown Cases, the judges held that although they might have felt great difficulty had the precedents been uniform, yet as there were precedents against the objection, they might consider, whether common sense required a statement of these particulars; and as the statement, if introduced, need not be proved, they thought it unnecessary. Upon the authority of this case, where an indictment stated the length and breadth of a wound, but not the depth, and it was objected that as there was only one wound, the depth ought to be stated, it was held that it was not necessary; for if common sense did not require it where there were several wounds, (as in Mosley's Case,) common sense did not require it where there *715 was only one. Rex v. Tomlinson, 6 Car. & Payne 370. So where an indictment merely alleged the giving of “ one mortal bruise,” and it was urged that the dimensions of the bruise ought to have been described, Parke said, “I am disposed to go further than the judges in Mosley's Case, and to say that it is not necessary to describe the bruises at all; such rule being in my judgment most consistent with common sense.” Turner's Case, 1 Lewin 177. See note to Archbold’s Crim. Pr. before cited. I would say, therefore, that even at common law, the omission to set forth the length and depth of the wound would in no case be fatal. But if it would at common law, I am of opinion that it would not under the Code, p. 770, § 10, which declares, that “ all allegations unnecessary to be proved, may be omitted in any indictment or other accusation.” It is not only unnecessary to prove the length and depth of the wound, as alleged in the indictment, but even that it was in the same part of the body in which it is alleged to have been.
These are all the objections which were taken to the indictment or either of the counts; and being all unsustainable, and the indictment being in my opinion free from just ground of exception in all respects, I think the demurrers were rightly overruled.
A bill of exceptions was taken by the prisoner to several opinions given by the court in the course of the proceedings and trial, one of which was the opinion of the court overruling the motion of the prisoner to instruct the jury to disregard the first count, which he alleged to be faulty. This is not assigned as error in the petition, but was relied on as such in the argument of the counsel of the plaintiff in error. Being of opinion, as before stated, that the demurrer to the first count was properly overruled, I am of course of opinion that the count is not faulty, *716 and the court was therefore right in refusing to instruct the jury to disregard it.
Another of the opinions given on the trial and set out in the bill of exceptions, was the opinion of the court refusing to permit Hyatt Lazier, who was jointly indicted with the prisoner and not then tried, to be examined as a witness; he being objected to by the attorney for the commonwealth only on the ground that he wras jointly indicted with the prisoner. This is assigned in the petition as one of the errors in the judgment; and I will now proceed to consider it.
It was a well settled though technical rule of evidence at common law, that a party in the same indictment could not be a witness for his codefendant until he had been first acquitted, or, in some cases, convicted, whether the defendants were jointly or severally tried. This rule was. recognized as the law of this state in Campbell's Case, 2 Va. Cas. 314; and has been recognized by the courts of some of our sister states. The People v. Bill, 10 John. R. 95; State v. Smith, 2 Ired. R. 402; Commonwealth v. Marsh, 10 Pick. R. 57. This was an unreasonable rule so far as it rendered the party incompetent as a witness for his codefendant when tried severally, merely on the ground of his being joined in the same indictment. If severally indicted, he was competent; and yet. he had the same interest in the subject matter and event of the prosecution in that case as in the case of a joint indictment; for in neither case was the judgment against his codefendant evidence against him. There was no reason, therefore, for a different rule in the two cases; and it seemed to be proper to make the rule uniform in both. Accordingly, the legislature declared in the Code, p. 752, § 21, that “Ho person who is not jointly tried with the defendant *717 shall be incompetent to testify in any prosecution, by reason of interest in the subject matter thereof.” I think one of the objects of the legislature in this section was, and its fair and reasonable construction is, to remove the objection of incompetency arising from the fact that the defendants are jointly indicted, in all cases in which they are severally tried; and to place them on the same footing in regard to competency as if they had been severally indicted. There could be no doubt of this but for the words, “ by reason of interest in the subject matter thereof,” at the conclusion of the section. It seems to be supposed that these words were used to limit the removal of the restriction to those cases in which the party has an interest in the “ subject matter,” as contradistinguished from the event of the prosecution. But it would be strange if the legislature intended to remove the restriction where the party has an interest in the subject matter of the prosecution, and let it remain where he has no such interest. The words were used in no such restrictive sense; and are susceptible of an explanation which is consistent with the construction I have placed on the section. The legislature did not intend to make the party competent as a witness, notwithstanding any objection that might otherwise be made against him. If it had so intended, the words in question would have been omitted. It intended merely to remove one ground of incompetency, and let any other which might exist remain unaffected. The party might be incompetent from infamy or other legal cause. It was therefore necessary to use the words in question, or other similar words which might have the effect of limiting the restoration of competency according to the legislative intention.’ Other and perhaps more appropriate words would have been used if the legislature had merely intended to apply the section to the case of a person jointly indicted, but not jointly tried, *718 with the defendant. In that case the words of the secfi°n probably would have been, “ No person jointly but not jointly tried, with the defendant, incompetent to testify in any prosecution by reason of his being so jointly indicted.” But the object of the section was much larger than this. It was intended to be applied to any person interested in the subject matter of the prosecution and not jointly tried with the defendant, whether jointly indicted or not, or whether concerned as an accomplice or otherwise, in the offence or not; and therefore words were used which were applicable to all the cases in the legislative mind. An accomplice is certainly interested in some sense in the subject matter of the prosecution; and his incompetency as a witness rested on that ground.
A brief history of this section may serve to account for its phraseology. It was formerly held that the party whose signature was forged was not a competent witness for the prosecution on an indictment for the forgery. Though interested in the subject matter, he was not directly interested in the event of the prosecution ; as the judgment therein could not be evidence for or against him in any suit on the instrument charged to be forged: And on principle, therefore, there was no good ground for his incompetency. But the rule of evidence was considered to be too firmly fixed to be altered, except by legislation; and a statute was therefore made for that purpose in England. In this state a similar statute was made at the revisal of 1819 ; the act “ for punishing persons guilty of certain thefts and forgeries and the destruction or concealment of wills” providing, that “ in any prosecution under this act, or for any forging or counterfeiting whatsoever, the testimony of no person shall be rejected on account of his interest in the subject, unless he be a party defendant to the prosecution. In the act of' 1847-8, sometimes called the Criminal Code, this provision of the *719 act of 1819, with some modifications, was adopted as a general provision, and was not confined to offences of forgery and the like. Sess. Acts, p. 124, § 33. The words of that act are, “No person, unless he be a party defendant therein, and jointly indicted, shall be incompetent to testify in support of any prosecution whatever, by reason of any interest which he may-have in the subject matter thereof.” The words “interest in the subject matter,” contained in the act of 1819, and peculiarly appropriate thereto, were thus substantially retained in the act of 1847-8, to which, in its extended application, they were still appropriate. The act of 1847-8 was limited to witnesses “ in support of any prosecution. It left the defect of the common law rule of evidence recognized in Campbell’s Case, entirely uncured. The provision in the Code, p. 752, § 21, so modifies the act of 1847-8 as to cure that defect; but substantially retains so much of the phraseology of that act as was not inconsistent with the object in view: And hence the words, “ by reason of interest in the subject matter thereof,” are found in the provision contained in the Code; but are as appropriate to all the objects of the law as any other words that could have been used.
But it is argued by the Attorney General, that co-defendants in a joint indictment are jointly liable, in case of conviction, whether it be joint or several, for all the expenses incident to the prosecution; Code, p. 783, § 11; and that this liability creates an interest in the event, as contradistinguished from “the subject matter” of the prosecution, which renders such codefendants, though severally tried, incompetent witnesses for each other, notwithstanding the provision in the Code, p. 752, § 21. It seems .to me that, in contemplation of law at least, the witness would be testifying against his interest; which would be, to convict his codefendant, who would then be bound with him for *720 the costs in case of his own conviction. A judgment of acquittal of his codefendant could not be used as • evidence in his favor on his own trial, and therefore he would not be benefited by his acquittal. But even if this liability for costs created such an interest in the event of the prosecution as would render a person'incompetent as a witness, according to the general rule of evidence on that subject, it would not have that effect in this case. For, to give it such effect would, to a great extent, avoid the operation of the provision in the Code, before referred to. If I am right in saying that one of the objects of that provision was to render codefendants in an indictment who are severally tried, competent witnesses for each other, if subject to no other objection than that of their being jointly indicted, that object would be entirely thwarted, if the liability for costs would render them incompetent. And thus one provision of the Code would have the effect of defeating another. The legislature intended to render them competent, notwithstanding their liability for costs; which, if not a part of the subject matter of the prosecution, are at least an incident thereto.
There are many cases in which a party, having an interest in the event of a prosecution, is still a competent witness. Wherever it appears, expressly or by implication, to be the intention of the legislature that he should be a competent witness, he will accordingly be so. Prosecutors, though liable for costs, are competent witnesses. Where prosecutors are entitled to rewards in case of conviction, they are still competent: The objection goes only to their credibility. “ It was upon the principle that the exclusion of persons entitled to reward would be inconsistent with the spirit of the acts giving the rewards, and against the grounds of public policy, that their competence was virtually continued. Per Cur. in King v. Williams, 9 Barn. & *721 Cress. 556, 17 Eng. C. L. R. 440; Roscoe’s Crim. Ev. 139. I am therefore of opinion that the court erred in refusing to permit Hyatt Lazier to he sworn or to testify in the cause.
Errors are assigned in various other opinions given hy the court in the course of the trial; but I deem it unnecessary to consider them, as the questions on which these opinions were given may not arise in a future trial.
I think the judgment should be reversed, the verdict set aside, and the cause remanded for a new trial; on which Hyatt Lazier is to be admitted as a witness, if again offered by the prisoner, and there be no other objection to his competency than that of his being jointly indicted with the prisoner.
The other judges concurred in the opinion of Moncure, J.
Judgment reversed.